**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0582-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

RHUDELL C. CRUZ-SNELLING,
a/k/a RHUDY CRUZ, RHODELL
SNELLING, RHUDELL CHARLES
CRUZ-SNELLING, RHUDY C.
CRUZ, RHUDELL C. CRUZ,
RHODELL CRUZ, RHUDELL C.
CRUZ-SNELLIN, RHUDELL
SNELLING, MICHAEL ROSSILLO,
SNELLING RHUDELL,
RHONDELL C. CRUZ-SNELLING,
RHODELL SNELLINGCRUZ, and
RHUDELL C. SNELLING,

    Defendant-Appellant.

_____

Submitted May 8, 2025 – Decided May 13, 2025

Before Judges Mawla and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 16-11-1420.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Jeffrey L. Weinstein, Designated Counsel, on the brief).

Esther Suarez, Hudson County Prosecutor, attorney for respondent (Stephanie Davis Elson, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Rhudell Cruz-Snelling appeals from the June 30, 2023 order denying his petition for post-conviction relief (PCR) following an evidentiary hearing.[1] We affirm.

We previously discussed the underlying facts and procedural history of defendant's case when we affirmed his conviction and sentence. State v. Cruz-Snelling, No. A-5242-17 (App. Div. Apr. 21, 2020) (slip op. at 4-10).[2] A summary of the facts for purposes of addressing defendant's arguments is presented here.

On June 3, 2016, Natasha Echevarria, Christina Pereira, and two other individuals were driving around Kearny. At approximately 1:00 a.m., they

---

[1] Defendant also appealed from the March 2, 2023 order denying his motion to relieve PCR counsel. Because that argument was not briefed, it is waived. Green Knight Cap., LLC v. Calderon, 469 N.J. Super. 390, 396 (App. Div. 2021).

[2] On January 15, 2021, our Supreme Court denied certification. State v. Cruz-Snelling, 245 N.J. 36 (2021).

2

stopped and got out of the car on Kearny Avenue to meet Erica Martinez, whom Pereira intended to fight. While waiting for Martinez, someone with braids and a black hoodie got out of a car and started shooting at them. Pereira was shot in the wrist, and another bullet grazed her neck. Echevarria and the others took her to a hospital in Newark. When Kearny police officers arrived, the shooter and the victims were gone. They found a bullet fragment and blood at the scene.

An officer went to the hospital in Newark where he found Pereira in the emergency room. Pereira refused to be interviewed, but police were able to interview Echevarria who gave a statement detailing her account of the shooting. When officers showed Echevarria a photo of defendant, she identified him as the person she recognized as "Suicide" who shot Pereira. Officers also obtained two surveillance videos from nearby businesses that showed a person running, as well as a person firing a gun at least four times at 1:23 a.m.[3]

Defendant was indicted for second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b); second-degree possession of a handgun for an unlawful purpose, N.J.S.A. 2C:39- 4(a)(1); four counts of second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1); four counts of third-degree

---

[3] The videos were not provided to the PCR court and are not included in the record on appeal.

aggravated assault, N.J.S.A. 2C:12-1(b)(2); third-degree possession of a controlled dangerous substance (CDS) (cocaine), N.J.S.A. 2C:35-10(a)(1); and fourth-degree possession of a CDS (marijuana), N.J.S.A. 2C:35-10(a)(3). The CDS charges were dismissed by the State before trial.

Echevarria testified at trial. She initially claimed she was drunk and high on Xanax at the time of the shooting and lied to the police about having seen the shooter because she "was actually medicated" and "would have told them anything."

After the trial judge determined the State would be permitted to play her prior inconsistent statement in which she identified defendant as the shooter for the jury, Echevarria admitted her initial trial testimony was false. She testified her statement to the police identifying the shooter as defendant, whom she knew as "Suicide," was the truth. Defendant "was the one with a gun in his hand" who shot Pereira. She saw defendant shooting when she turned around before she ran. He "was just shooting" multiple times toward her and her friends. She recalled once having seen "Suicide" with the same gun when she was at Martinez's house. Echevarria identified defendant in court as the shooter.

During deliberations, the jury asked to review the surveillance videos. The jury also asked if it could have defendant stand up so it could compare his

body frame to the footage. The surveillance videos were replayed for the jury; one of the videos was replayed twice at the jury's request. After further deliberations, the jury viewed one of the surveillance videos twice more.

Defendant was found guilty of unlawful possession of a handgun; possession of a handgun for an unlawful purpose; second-degree aggravated assault, serious bodily injury; third-degree aggravated assault, bodily injury with a deadly weapon; and six counts of fourth-degree aggravated assault, pointing a firearm, N.J.S.A. 2C:12-1(b)(4). He was subject to a mandatory extended term because of a prior conviction for possession of a weapon for an unlawful purpose. On April 11, 2018, after appropriate mergers, defendant was sentenced to a total of eighteen and one-half years in prison, subject to just under sixteen years of parole ineligibility.

On February 28, 2022, defendant filed a pro se petition for PCR. After PCR counsel was appointed, he filed a supplemental brief arguing trial counsel was ineffective for failing to communicate with defendant and review and provide defendant with full discovery, including the surveillance videos. Specifically, he argued, "[h]ad trial counsel effectively communicated with [d]efendant, he would have known that on June 1, 2016, [d]efendant was treated for a gunshot wound to the leg, and the injury would have prevented [d]efendant

A-0582-23

from 'running' away as depicted on the surveillance video." He provided medical records obtained from the Hudson County Correctional Center in support of his claim.

Defendant also argued counsel was ineffective for failing to discuss the State's five-year plea offer with him. This plea offer, he contended, was extended by the State immediately prior to the start of trial, and trial counsel rejected the offer without discussing it with him. Defendant filed an amended pro se petition for PCR and a supplemental brief arguing: (1) the State failed to provide the surveillance videos in discovery; (2) the State failed to disclose Echevarria's criminal record; and (3) trial and appellate counsel failed to raise those arguments.

On December 8, 2022, Judge Maureen B. Mantineo heard oral argument. She determined defendant's pro se arguments lacked merit because the State provided the surveillance videos in discovery and Echevarria did not have a criminal record. She determined an evidentiary hearing was warranted on defendant's remaining claims.

On June 8, 2023, the judge conducted an evidentiary hearing. Defendant testified the first time trial counsel showed him the surveillance videos was on "the last day of jury selection . . . like opening arguments or whatever." Before

that, counsel only showed him "a bigger picture, blown up of the back of somebody fleeing the scene" and "said this is all they had." This occurred "a long time before jury selection."

When counsel showed defendant that picture, "he explained . . . that could[ not] be [him] because [he] had been shot around the time that this took place. [He] even signed the HIPAA [Health Insurance Portability and Accountability Act] release forms for [trial counsel] to get the medical records, but he never followed through with it." He claimed he had been shot in the right thigh "[t]wo days before the shooting," and "[b]y having been shot in [the] leg . . . [he] was in severe pain. [He] could barely walk. [H]e had a . . . bad limp."

Defendant had a video conference with counsel from prison approximately a week before trial. Counsel told him he "could get [him] a deal for the drugs, which [defendant] was confused about because [he did not] believe that [he] was charged with drugs[,] and that was the last [they] ever discussed" a plea deal.

On "the day of the trial," the prosecutor "said something about a plea deal, but [defendant's] lawyer did[ not] bring it to [his] attention." Defendant and trial counsel "were in the back room, like where you talk to your lawyer," and the

7

prosecutor "came back there while [they] were talking" and "said I[ am] offering a five, this is the last I[ am] offering, take it or leave it." Defendant claimed his "lawyer told [the prosecutor] you know, you [are not] supposed to be back here. And he just [waved] it off and then [the prosecutor] walked out." Defendant did not ask his counsel what the prosecutor meant, and his counsel never explained the five-year offer to him. He testified "[i]f there was a plea offer of five years," he "would have taken it simply because [he] had already been sentenced to a [fifteen] with a [seven and one-half]. So [he] would have already been doing seven years[,] and it would have just been over."

Trial counsel testified he had thirty-two years of experience representing criminal defendants. He was assigned to represent defendant in this case and another pending indictment arising out of an incident in Jersey City (the Jersey City case). Both cases went to trial, but the Jersey City case was tried first.

Counsel obtained the surveillance videos from the State in discovery and reviewed them with defendant prior to jury selection. He recalled defendant had "some problem viewing . . . some or all of the videos at the jail . . . [and] at some point in time . . . [they] sat . . . in the jury room and watched them." They watched the videos "prior to the other trial which took place first. So . . . it had to be minimum three or four months before the . . . trial [in this case] actually

A-0582-23

started." Counsel was "sure" he viewed the videos with defendant before trial in the Jersey City case because they "would have gone over everything at the same time because [they] would[ not] have made a decision about proceeding to trial on one case without knowing what [they] were going to do on the other case."

Trial counsel did not recall defendant telling him about an injury to his leg or that he had been shot prior to June 3, 2016. Counsel believed defendant was the person depicted in the surveillance video. He printed "screen shots from the video which to [him] . . . clearly showed it was [defendant]," and gave copies of those screenshots to defendant. His "opinion was the screen shot that showed the person walking up the side street who passes right in front of the camera to [him] there was no doubt that . . . was [defendant]." "[O]ne video . . . show[ed] the person who appeared to [him] to be [defendant] walking up past the video, then in the direction further up the block is where the . . . shooting took place." "Then there[ is] a video from the other side of the street that shows a person running back down[,] which again appear[ed] to be [defendant] . . . ."

Counsel and defendant "talked about" the fact that "you can[ not] see that that person [running] is a person who goes up there and commits [the] shooting.

9

But the argument was that . . . even if that is [defendant,] if . . . somebody goes up there hears a shot and comes running back, . . . you can[ not] see that person actually do anything." Counsel contended evidence defendant had a leg injury "would be significant unless you have a video that in [his] opinion shows [one hundred] percent that that[ is] him." "[I]t[ is] not significant whether you have a leg injury or not if that video says it[ is] you. It[ is] only significant . . . if you can argue that that[ is] not you."

After the trial in the Jersey City case was completed but prior to sentencing, the State extended an offer that "was a concurrent number which would not have caused him to serve any additional time." Counsel testified he did not recall the specific offer, but the "[n]umber seven sticks in [his] head." Defendant rejected that plea offer. Counsel recalled speaking with defendant's father "to try to get [him] involved in the conversation with [defendant]. But his father said that the decision was up to [defendant] . . . ." Defendant was not amenable to taking any plea and his decision was "[t]o go to trial."

Counsel did not recall another plea offer being extended. If a plea offer had been extended by the State at any time, he would have discussed it with defendant.

On June 30, 3023, Judge Mantineo entered an order denying defendant's petition supported by a written opinion. She concluded defendant failed to satisfy either the performance or prejudice prong of the two-part test to establish a claim of ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), and adopted by our Supreme Court in State v. Fritz, 105 N.J. 42 (1987).

With respect to the performance prong, the judge found trial counsel "to be [a] much . . . more credible witness." Based on his testimony he reviewed the surveillance video with defendant prior to trial in the Jersey City case and provided defendant with "still images from the video[,] which the State would rely upon to identify" him, she concluded defendant's claim he saw the video for the first time during jury selection lacked merit.

The judge also determined counsel was not ineffective for allegedly failing to obtain the medical records. She found "even if he had [the records], it would not have altered his trial strategy" because he "believed that the surveillance footage sufficiently identified [defendant] and clearly showed him running from the scene of the incident." She did "not find credible evidence in the record to support a finding that [trial counsel] failed to investigate[] or to discuss the impact of the surveillance footage with [defendant]."

11

The judge also rejected defendant's claim trial counsel failed to discuss a plea offer with him. Counsel "asserted that he received an offer from the State verbally and discussed this offer with" defendant and testified "it is his practice to review all plea offers with his clients." In this case, "upon reviewing the State's offer with [defendant, he] was not amenable to the offered plea" and "made the decision to go to trial, rather than to accept the plea offer." The judge found "there is no credible evidence in the record to suggest that [trial counsel] failed to discuss . . . the State's plea offer with [defendant]."

With respect to the prejudice prong, the judge found "the medical records provided . . . do not support [defendant's] assertion" he "was unable to run on the date of the incident and therefore could not have been the individual seen running in the surveillance footage." She found:

> The records show that [defendant] was treated on June 4, 2016, one day after the incident in question. An assessment from June 8, 2016, notes that [defendant] was able to "ambulate freely" with "zero gait." Furthermore, an assessment from June 7, 2016, described [defendant's] right femur (the area where he was shot) as having a "normal ossification pattern," with "no fracture or dislocation," and "no foreign body." [Defendant's] hip joint was grossly intact, and his right femur was described as "normal." These records do not support the contention that [defendant] was unable to run on the date of the incident and instead serve to suggest that [defendant] was not hampered by his injury in any meaningful capacity.

12

The judge also determined there was "no evidence in the record to suggest that [defendant] would have accepted the plea offer had it been discussed with him, save for [his] bald unsubstantiated assertion that he would have accepted the plea." She found credible trial counsel's testimony defendant "had no interest in any plea deal" and insisted on going to trial. The judge concluded there was no basis "to find . . . there is a reasonable probability that but for counsel's errors, [defendant] would not have insisted on going to trial and would have accepted the State's plea offer."

On appeal, defendant raises the following points for our consideration.

POINT I

TRIAL COUNSEL'S FAILURE TO TIMELY REVIEW VIDEO EVIDENCE AND OBTAIN MEDICAL RECORDS CONFIRMING THAT [DEFENDANT] WAS SHOT IN THE LEG DAYS BEFORE THE INCIDENT, AND THUS COULD NOT BE THE PERSON DEPICTED IN THE VIDEO RUNNING FROM THE SCENE, DENIED HIM THE RIGHT TO PRESENT A COMPLETE DEFENSE, AND A FAIR TRIAL.

POINT II

TRIAL COUNSEL FAILED TO ADEQUATELY EXPLAIN THE STATE'S PLEA OFFER OF FIVE YEARS WITH [EIGHTY-FIVE] PERCENT, THEREBY INTERFERING WITH [DEFENDANT'S] DECISION TO PROCEED TO TRIAL.

A-0582-23

When a PCR court conducts an evidentiary hearing, we review factual and credibility findings on a deferential standard and only reverse them if they are not supported by substantial credible evidence. See State v. Gideon, 244 N.J. 538, 551 (2021) (quoting State v. Nash, 212 N.J. 518, 540 (2013)). However, "we need not defer to a PCR court's interpretation of the law[,]" which we review de novo. Nash, 212 N.J. at 540-41.

To establish a PCR claim of ineffective assistance of counsel, a defendant must satisfy the two-pronged test formulated in Strickland, 466 U.S. at 687, and adopted by our Supreme Court in Fritz, 105 N.J. at 58. They first must "show[] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment," and then prove they suffered prejudice due to counsel's deficient performance. Strickland, 466 U.S. at 687; accord Fritz, 105 N.J. at 52.

Under the first prong, counsel's representation must be objectively unreasonable. State v. Pierre, 223 N.J. 560, 578 (2015). Defendants "must do more than make bald assertions that [they were] denied the effective assistance of counsel." State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). There is a strong presumption counsel "rendered adequate assistance and made

all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690.

The second prong requires "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Pierre, 223 N.J. at 583 (quoting Strickland, 466 U.S. at 694). Because prejudice is not presumed, the defendant must demonstrate "how specific errors of counsel undermined the reliability of the" proceeding. United States v. Cronic, 466 U.S. 648, 659 n.26 (1984); see also Fritz, 105 N.J. at 52 ("[P]rejudice must be proved . . . it is not presumed."). "Important to the prejudice analysis is the strength of the evidence that was before the fact-finder at trial." Pierre, 223 N.J. at 583.

Counsel may be ineffective for "fail[ing] to conduct an adequate pre-trial investigation." State v. Porter, 216 N.J. 343, 352-53 (2013) (citing State v. Preciose, 129 N.J. 451, 464 (1992)). Where a defendant alleges counsel rendered ineffective assistance by "inadequately investigat[ing their] case, [the defendant] must assert the facts that an investigation would have revealed, supported by affidavits or certifications upon the personal knowledge of the affiant or the person making the certification." Id. at 353 (quoting Cummings, 321 N.J. Super. at 170); accord R. 3:22-10(c).

15

Trial counsel "has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." Missouri v. Frye, 566 U.S. 134, 145 (2012); see State v. Powell, 294 N.J. Super. 557, 564 (App. Div. 1996) (quoting United States v. Barber, 808 F. Supp. 361, 378 (D.N.J. 1992), aff'd, 998 F.2d 1005 (3d Cir. 1993)) ("[A]n attorney's conduct is incompetent when a plea offer is never communicated by the attorney to the client."). To prove prejudice in the context of a plea offer, a defendant must show that but for counsel's failure to communicate, there was a "reasonable probability" they would have accepted its terms. Lafler v. Cooper, 566 U.S. 156, 162 (2012).

Pursuant to these principles, we affirm substantially for the reasons set forth in Judge Mantineo's thorough and well-reasoned opinion. We add the following comments.

We discern no basis to disturb the judge's determination based on trial counsel's credible testimony he did not fail to discuss a plea offer with defendant. Nor is there any reason to question her determination defendant would not have accepted any plea offer.

Defendant's claim he would have accepted the plea because he had already been sentenced in connection with the Jersey City case and he "would have

already been doing seven [years]" is contradicted by the record. Trial counsel testified that prior to trial but after he was found guilty in the Jersey City case, defendant rejected a plea offer that "was a concurrent number[,] which would not have caused him to serve any additional time." Indeed, defendant testified he had a video conference a week before trial during which counsel advised him "he could get [him] a deal for the drugs." Defendant does not offer any support for his claim he would have accepted a similar plea offer shortly thereafter and therefore failed to demonstrate there was a "reasonable probability" he would have done so. See Cooper, 566 U.S. at 162.

We are satisfied the judge correctly determined defendant was not prejudiced by the alleged failure to obtain his medical records. The records do show defendant suffered a gunshot wound to his right thigh at some point before his arrest and incarceration on June 4, 2016. However, as the judge noted, as of June 8, he was able to "'ambulate freely,' with '[no] gait.'" In addition, the June 7 radiology report indicates "[n]o fracture or dislocation," the "hip joint is grossly intact," and there was "[n]o foreign body" detected. When considered against "the strength of the evidence that was before the fact-finder at trial," Pierre, 223 N.J. at 583, the judge properly found defendant was not prejudiced

because the medical records would not have changed the result of the proceeding.

To the extent we have not addressed any remaining arguments, it is because they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division